**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **THE OHIO STATE UNIVERSITY** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **Case No. 2:12-cv-662** |
| | : | **Judge Frost** |
| **SKREENED LTD., et al.** | : | **Magistrate Judge Abel** |
| | : | |
| **Defendants.** | : | |

## FIRST AMENDED COMPLAINT FOR TRADEMARK INFRINGEMENT, UNFAIR COMPETITION, PASSING OFF, COUNTERFEITING AND VIOLATION OF RIGHT OF PUBLICITY

Plaintiff The Ohio State University ("Ohio State"), for its first amended complaint against defendants Skreened Ltd. ("Skreened") and Daniel Fox (Fox") (collectively, "Defendants"), states as follows:

### Nature of the Case

1.        This is an action for trademark infringement, unfair competition, passing off and counterfeiting under the Lanham Act, 15 U.S.C. § 1114 and § 1125(a), relating to the unlawful appropriation of Ohio State's registered and common law trademarks, and violation of the rights of publicity assigned to Ohio State by head football coach Urban F. Meyer ("Meyer") under O.R.C. § 2741, *et seq.,*, by Defendants in their sale of t-shirts and other merchandise online and in their retail store.

2.      Plaintiff Ohio State is a public institution of higher learning located in Columbus, Ohio that is engaged in providing college level educational courses and college sport exhibition events and recreation programs, dramatical and musical entertainment events.

3.      Upon information and belief, Defendant Skreened is an Ohio Limited Liability Company, with a retail store located at 2887 Silver Drive, Columbus, Ohio, 43211.

4.      Upon information and belief, Defendant Daniel Fox is the owner of Skreened and resides at 1262 Bryden Road, Columbus, Ohio  43205.  According to the records of the Ohio Secretary of State, Defendant Fox is also the sole incorporator and registered agent for Skreened Ltd.  Defendant Fox, as owner of Defendant Skreened, has the right and ability to supervise the infringing activity alleged herein, and has a direct financial interest in Defendant Skreened, and as such is jointly and severally liable with Defendant Skreened.

5.      This court has jurisdiction over this matter under 15 U.S.C. § 1125 and 28 U.S.C. § 1338.  Venue is proper in this Court under 28 U.S.C. § 1391(b), as Ohio State's cause of action arose and Ohio State is being injured in this judicial district, and because Defendants are residents of this forum.

**The Ohio State Trademarks**

6.      Established in 1870, The Ohio State University has developed into one of the most well-respected institutions of higher learning in the country.

7.      For more than 140 years Ohio State has been actively engaged in providing college level educational courses and college sport exhibition events and recreation programs, dramatic and musical entertainment events.  Ohio State licenses and markets various products and services, including publications, clothing, and other merchandise using Ohio State's trademarks.

8. In connection with the activities and products described in the preceding paragraphs, Ohio State is the owner of, among others, the following federally registered trademarks:

    a. "BUCKEYES" — registration number 1,152,683, registered April 28, 1981, to provide college sport exhibition events and recreation programs;

    b. "BUCKEYES" — registration number 1,267,035, registered on February 14, 1984 for use on: toy stuffed animals, Christmas decorations, bean bags, plastic toys, foam toys and equipment sold as a unit for playing a stick ball game; clothing-namely, T-shirts, ties, scarves, bibs, sweatshirts, athletic shorts, hats, aprons, jogging suits and sweaters; blankets, textile placemats, handkerchiefs, quilts and pennants; tumblers, cups, mugs, glasses and insulated beverage container holders; hassocks, bean bag leisure furniture, letter holding boxes, mirrors, and folding seats for use by individuals in athletic stadiums and plaques; tote bags; pens, posters, decals, and paintings; jewelry-namely, rings, pins, belt buckles and key chains, all being made of precious metal; electric lamps; providing college level educational programs, sport exhibition events and recreation programs;

    c. BUCKEYE DESIGN — registration number 2,437,954, registered January 2, 2001 for use on decals and stickers;



    d. "OHIO STATE" — registration number 1,294,114, registered September 11, 1984 for providing college level educational programs, sport exhibition events, recreation programs, toy stuffed animals, bean bags, plastic figurine toys, foam figurine toys, bats, balls and other equipment sold as a unit for playing a stick ball game, shoe laces, t-shirts, ties, scarves, bibs, sweatshirts, shorts, hats, aprons, jogging suits, sweaters, blankets, pennants, textile placemats, handkerchiefs, quilts, tumblers, cups, mugs, glasses, beverage container insulators, hassocks, bean bag leisure furniture, mirrors, and folding seats for use by individuals in athletic stadiums, tote bags, pens, posters, decals, paintings, letter holding boxes, rings, pins, belt buckles, key chains and electric lamps;

    e. "OHIO STATE" — registration number 1,152,682, registered April 28, 1981 for college sport exhibition events and recreation programs, dramatical and musical entertainment events and college level educational courses;

    f. "OSU" — registration number 1,121,595, registered July 3, 1979 for college sport exhibition events and recreation programs, dramatical and musical entertainment events and college level educational courses;

g. "OHIO STATE UNIVERSITY" — registration number 1,294,115, registered September 11, 1984 for jewelry-namely, rings, pins, belt buckles and key chains; pens, posters, decals, paintings, letter holding boxes; hassocks, bean bag leisure furniture, plaques, mirrors and folding seats for use by individuals in athletic stadiums; tumblers, cups, mugs, glasses and beverage container insulators; blankets, pennants, textile placemats, handkerchiefs and quilts; clothing-namely, t-shirts, ties, scarves, bibs, sweatshirts, shorts, hats, aprons, jogging suits and sweaters; toy stuffed animals, Christmas decorations, bean bags, plastic figurine toys, foam figurine toys, and equipment-namely, bats and balls sold as a unit for playing a stick ball game; and : providing college level educational programs, sport exhibition events and recreation programs;

h. "O" – registration number 2,689,612, registered February 25, 2003 for clothing, namely, jackets, sweaters, hats and T-shirts.



i.            - registration number 4,028,867, registered September 20, 2011, for Baseball caps and hats; Sweatshirts; T-shirts

j. "THE SHOE" – registration number 3,186,508, registered December 19, 2006 for clothing items for men, women, and children, namely, hats caps, shirts, t-shirts, shorts, jackets, and sweaters

k. "SCARLET & GRAY" – registration number 3,173,656, registered November 21, 2006 for hats, shirts, and t-shirts



l.            -- registration number 3,394,719, registered March 11, 2008 for clothing, namely, hats, caps, shirts, t-shirts, jackets, jerseys, wind resistant jackets and sweatshirts

m. "GOLD PANTS" – registration number 3,394,720, registered March 11, 2008 for clothing, namely , hats, caps, shirts, t-shirts, jackets, jerseys, wind resistant jackets and sweatshirts

n.            "OHIO STATE" – registration no. 2,094,602,

registered September 9, 1997 for clothing items for men, women and children, namely, sweatshirts, T-shirts and sweaters



o.          Registration no. 4,266,878, registered January 1, 2013 for clothing, namely, t-shirts

9.          Copies of the certificates of registration for each of these trademarks were attached to Plaintiff's complaint as Exhibits A through M, respectively.   Copies of the certificates of registration for Registration Nos. 2,094,602 and 4,266,878 are attached hereto as Exhibit Q.

10.         The certificates of registration identified in the preceding paragraph are valid and subsisting, and Ohio State has record title in the trademarks described above.

11.         The certificates of registration are prima facie evidence of the validity of the registered trademarks, Ohio State's ownership of the registered trademarks, and Ohio State's exclusive right to use the registered trademarks in connection with the goods and services specified in the certificates of registration enumerated above. The registered marks set forth in paragraph 8(a) -- (h) and (l) - (n) are incontestable, which provides conclusive evidence of their validity under 15 U.S.C. § 1115(b), and constructive notice of the registrant's claim of ownership under 15 U.S.C. § 1072.

12.          In connection with the promotion of its various academic, athletic, entertainment and philanthropic activities, and in association with its registered and common law trademarks, many of which include the term "Buckeyes", Ohio State has historically used the term "Buckeyes" to refer to and describe various individuals, teams, school songs and organizations affiliated with Ohio State, including use of the school fight song *Buckeye Battle Cry* since 1919 and adoption of "Brutus Buckeye" as the official Ohio State mascot in 1965.

13.    *Buckeye Battle Cry* was composed by vaudeville performer and songwriter Frank Crumit in 1919, as an entry in a contest to create a new Ohio State fight song in conjunction with the upcoming construction of Ohio Stadium.  Below is a copy of the cover of the original sheet music from 1919 for *Buckeye Battle Cry:*



14.    Since the 1930's, every football game in Ohio Stadium begins with The Ohio State University Marching Band entering the ramp to Ohio Stadium performing *Buckeye Battle Cry* after it forms the famous Script Ohio.  The tradition ends with the singing of one chorus of the fight song by band members. The song is also played after every time the Buckeyes score.  Videos of The Ohio State University Marching Band entering Ohio Stadium, forming Script Ohio and performing Buckeye Battle Cry are available on YouTube.  A copy of a portion of the booklet "Script Ohio – 110 Years of The Ohio State University Marching Band", that describes the Band's longstanding use of *Buckeye Battle Cry* was attached as Exhibit N to the Complaint.

**Buckeye Battle Cry**

In old Ohio (Columbus) there's a team,
That's known thru-out the land; Eleven
warriors, brave and bold, Whose fame
will ever stand,
And when the ball goes over,
Our cheers will reach the sky,
Ohio Field will hear again
The Buckeye Battle Cry.
Chorus
Drive! Drive on down the field;

**Men of the scarlet and gray;**
**Don't let them thru that line,**
**We've got to win this game today,**
**Come on, Ohio!**
**Smash thru to victory,**
**We'll cheer you as you go;**
**Our honor defend**
**So we'll fight to the end**
**For Ohio.**



15.     In connection with the promotion of its various academic, athletic, entertainment and philanthropic activities, Ohio State has also historically used, as a trademark, the Block O as well as a Block O with Buckeye Leaves:



16.     Ohio State's use of the Block O has been continuous since 1898 and use of the Block O with Buckeye Leaves trademark has been continuous since 1973 and the public now associates the Block O trademarks solely as indicating origin in Ohio State.

17.     Ohio State's iconic football stadium, known as "The Horseshoe" or "The Shoe" is another mark that is exclusively associated with Ohio State.



Completed in 1922, The Shoe was added to the National Register of Historic Places in 1974. With a capacity of over 100,000, it is the fourth largest football stadium in the United States. The stadium, its unique design and the designations "The Horseshoe" and "The Shoe" are exclusively associated in the minds of the public as indicating origin in Ohio State.

18.     Since 1878 Ohio State's official school colors have been scarlet and gray with scarlet being the predominant color, and those colors have been used on all things Ohio State.

19.     Ohio State has used the registered trademarks and the common law trademarks described above (collectively the "Ohio State Trademarks") continuously and exclusively for identification with Ohio State and its academic, athletic and entertainment activities. The Ohio State Trademarks and their respective reputation and goodwill have continuously grown and are now well known throughout the City of Columbus, the State of Ohio and the United States.

20.     Ohio State's athletic teams and students have been known as "Buckeyes" since at least as early as 1920. Due to the long, extensive and continuous use of the term "Buckeye" in association with Ohio State teams, programs, and events, consumers now associate the term Buckeye with Ohio State. When used in connection with Ohio State athletics the term "Buckeye," as well as the other Ohio State Trademarks are strong and readily accepted by the public as hallmarks of Ohio State athletics.

21.     The term "Gold Pants" and the depiction of a pair of gold football pants is another longstanding Ohio State tradition. A gold miniature charm depicting a pair of football pants is

given to all players and coaches following a victory over the Michigan Wolverines. The tradition began as the result of a comment to reporters by newly hired head coach Francis Schmidt on March 2, 1934: "How about Michigan? They put their pants on one leg at a time, the same as we do!" The first gold pants, which were a creation of Simon Lazarus (president of the Lazarus chain of department stores) and Herbert Levy, were awarded that year for a 34-0 defeat of the Wolverines.

22.     Ohio State licenses and markets many items using the trademarks "Buckeye," "Buckeyes," "Brutus Buckeye," Block O, Block O with Buckeye Leaves, "Go Bucks", the Athletic Logo and the decal "Buckeye Leaf," which have been placed on the helmets of Ohio State football players for making an excellent play for more than 40 years.



23.     Ohio State's academic and athletic programs rank among the best in the nation. Ohio State's undergraduate program and graduate programs for law, medicine, business, engineering and education are all currently ranked among the top 40 schools in the nation in their respective areas by U.S. News & World Report.

24.     Ohio State alumni have an affinity for Ohio State that runs deep and these Buckeyes can be found in every corner of the country.  There are approximately 464,000 Ohio State alumni located in virtually every country throughout the world. When consumers throughout the nation (or world) hear the word "Buckeye" in connection college athletics, hear the words *Buckeye Battle Cry* or the fight song, or see the words "Buckeye Battle Cry", they

immediately associate that phrase as indicating origin with Ohio State and its athletic teams and band.

25.     In 2002, the Ohio State football team, the Buckeyes, won the NCAA football championship. This was the seventh national football championship for the Buckeyes. Only five other programs, in the history of collegiate football, have amassed more than seven national championships.

26.     In the 2006 — 2007 athletic year, Ohio State Buckeye teams appeared in both the NCAA Football National Championship and the NCAA Final Four and championship basketball games. This success again cemented the presence of the Ohio State marks on a national stage, making goods bearing the Ohio State marks even more sought after and desired. Not surprisingly, 2006 — 2007 was a record year for licensing revenue for Ohio State, which was in excess of nine (9) million dollars.

27.     In 2008, the Buckeyes again played for the national championship of college football in the BCS National Championship Game. In 2009, the Buckeyes played in the BCS-Fiesta Bowl, and in January 2010, the Buckeyes defeated Oregon in the BCS Rose Bowl.

28.     As a result of Ohio State's fame and its extensive use, advertising, and sale of goods and performance of athletic services bearing the Ohio State Trademarks, the Ohio State Trademarks have acquired strong secondary meaning, have achieved favorable national recognition, and have become assets of significant value as symbols pointing only to Ohio State, its services, products and goodwill.

29.     Ohio State approves and maintains quality control over all of the products and services it licenses and produces, the goods and services bearing its marks, and its trade dress to protect the tradition, prestige and goodwill associated with these marks, and Ohio State makes systematic efforts to safeguard the quality and integrity of the Ohio State marks, and the public assumes that Ohio State has approved, sponsored or endorsed all products and services bearing its trademarks.

30.     For more than thirty (30) years, Ohio State has both used and licensed third parties to use the Ohio State Trademarks on various items and services, including clothing of all types, food products, restaurant services, internet websites, screen savers, athletic uniforms, calendars, novelties, books, household goods, toys, sporting goods, music, home furnishings, glassware, collectibles, pens and watches.

31.     Ohio State's licensing program has become the most profitable collegiate licensing program in the United States in the past five (5) years, generating royalties of more than $35 million. The past success of Ohio State's academic and athletic programs has resulted in extensive exposure of Ohio State's trademarks to a national audience and has created a large demand for products and services bearing Ohio State's trademarks throughout the United States.

32.     In fact, Ohio State currently has approximately 500 authorized licensees for products using the Ohio State Trademarks on all types of clothing products, including shirts, food products and services, such as ice cream, breakfast cereals, popcorn snacks, pretzel snacks, tortilla chips, cinnamon cracker snacks, gourmet candies, hot dogs, cafés and restaurants, to computer equipment, such as screen savers, mouse pads, and wrist rests, hats, flags and banners.

33.     On November 28, 2011 Ohio State announced in a widely-publicized press conference that it had hired famed former University of Florida football coach (and Ohio State alumnus) Urban Meyer as its head football coach with a six-year contract worth $ 4 million annually.  The hiring of Meyer was greeted with great excitement by Buckeye fans all over the world.

34.     In May of 2012, Meyer assigned his rights of persona and trademark to Ohio State. A copy of the Assignment was attached as Exhibit O to Plaintiff's Complaint.  On June 4, 2012, Ohio State applied for a federal trademark registration of the name "Urban Meyer" for "clothing items for men, women and children, namely, hats, caps, shirts, t-shirts, shorts, jackets and sweaters."  The application was assigned serial no. 85/642673. Meyer's assigned rights in his name, voice, signature, photograph, image, likeness, or distinctive appearance are referred to

herein as the "Meyer Persona".

35.     Defendants are not and have not been licensed by Ohio State for any products or services.

### Defendants' Infringing Use and Counterfeiting of the Ohio State Trademarks

36.     Defendants are in the business of printing and selling t-shirts with a wide variety of designs.  Upon information and belief, the designs are submitted to Defendants by customers, Defendants print the designs onto the shirts, and the products are then offered for sale in Defendants' brick and mortar location in Columbus, and online at its website www.skreened.com.  Upon information and belief, the customers submitting the designs receive a portion of the proceeds from the sales of their designs, and are permitted to operate on-line "storefronts", but Defendants are solely responsible for advertising and marketing the items, for processing payments, and for shipping the items.

37.     Defendants are well aware of the Ohio State Trademarks and Ohio State's use of the Ohio State Trademarks on clothing items.  Indeed, Ohio State has contacted Defendant Fox on four occasions over the past three years, most recently, in December of 2011, to demand that Defendants remove infringing items from the skreened.com website. Attached to the Complaint as Exhibit P were copies of cease and desist letters sent to Defendants. Plaintiff received no response to any of these letters.

38.     Below are examples of infringing merchandise using the Ohio State Trademarks and/or the Meyer Persona that have been available on the skreened.com website:





4039068v2













39.     Defendants have also sold, offered for sale, distributed and/or advertised t-shirts

that display counterfeits or colorable imitations of registered Ohio State trademarks.  Below are examples of counterfeit merchandise that have been displayed on the skreened.com website:











40.     Defendants' unauthorized use of the Ohio State Trademarks and/or the Meyer Persona is commercial in nature and is intended to, and will, directly compete with the lawful publication, distribution and advertising commercial activities of Ohio State and its licensees to the detriment of Ohio State.

## COUNT ONE
## INFRINGEMENT OF REGISTERED TRADEMARKS UNDER 15 U.S.C. § 1114

41.     Ohio State incorporates the allegations contained in paragraphs 1 through 40 as if fully restated herein.

42.     The commercial use of Ohio State's registered Ohio State Trademarks on t-shirts and other merchandise by Defendants is a willful infringement of the registered Ohio State Trademarks, and such commercial use was with knowledge of and intended to trade off of Ohio State's prior rights to the Ohio State Trademarks.

43.     Defendants' production and/or sale of infringing m e r c h a n d i s e that uses the

Ohio State Trademarks creates a likelihood of confusion as to the affiliation, connection, association or sponsorship, affiliation or endorsement by Ohio State in an appreciable number of college athletics consumers and potential consumers.

44.     The Ohio State Trademarks, as described herein, are quite strong in the context of licensed merchandise bearing the Ohio State Trademarks.

45.     The relatedness, or similarity, between Ohio State licensed products and Defendants' infringing merchandise point to a high likelihood of confusion.  Consumers interested in purchasing Ohio State apparel are likely to believe that Defendants' merchandise come from the same source, or are somehow connected with or licensed by Ohio State.

46.     The goodwill of the Ohio State Trademarks is of enormous value, and Ohio State is suffering and will continue to suffer irreparable harm should Defendant's unauthorized production and sale of the infringing merchandise continues.

47.     Defendant's use of the Ohio State Trademarks on the infringing merchandise will continue unless enjoined by this Court.

48.     Ohio State is entitled to a permanent injunction against Defendants, as well as all other remedies available under the Lanham Act, including, but not limited to, compensatory damages, treble damages, disgorgement of profits, and costs and attorney's fees.

## COUNT TWO
## UNFAIR COMPETITION AND PASSING OFF UNDER 15 U.S.C. § 1125(a)

49.     Ohio State incorporates the allegations contained in paragraphs 1 through 48 as if fully restated herein.

50.     Defendants' production and sale of merchandise bearing the Ohio State Trademarks on merchandise that competes directly with Ohio State's licensed apparel products, and in the production and sale of merchandise bearing the Meyer Persona, will likely cause confusion, mistake or deception on the part of persons interested in purchasing Ohio State apparel  as to the origin, sponsorship or approval by Ohio State of the Defendants' infringing

merchandise in violation of 15 U.S.C. Section 1125(a).

51.     Upon information and belief, Defendants' unfair competition and passing off has been willful and deliberate, designed specifically to trade upon the consumer goodwill created and enjoyed by Ohio State for Defendants' profit.

52.     Ohio State's consumer goodwill is of enormous value, and Ohio State is suffering and will continue to suffer irreparable harm if Defendants' unfair competition and passing off as to the infringing merchandise is allowed to continue.

53.     Defendants' unfair competition and passing off will likely continue unless enjoined by this Court.

54.     Ohio State is entitled to a permanent injunction against Defendants, as well as all other remedies available under the Lanham Act, including but not limited to compensatory damages, treble damages, disgorgement of profits, and costs and attorney's fees.


## COUNT THREE
## VIOLATION OF RIGHT OF PUBLICITY UNDER O.R.C. CHAPTER 2741

55.     Ohio State incorporates the allegations contained in paragraphs 1 through 54 as if fully restated herein.

56.     Urban Meyer is a living individual and a resident of the State of Ohio, and assigned is rights of publicity and persona to Ohio State pursuant to O.R.C. § 2741.04.

57.     The Meyer Persona has commercial value and Defendants are improperly using the Meyer Persona for a commercial purpose by using it on merchandise without authorization or consent.

58.     As the assignee of the Meyer Persona, Ohio State is being injured by Defendants improper commercial use of the Meyer Persona.

59.     Ohio State is entitled to a permanent injunction against Defendants and all other

remedies available under O.R.C. § 2741.07, including actual damages and profits derived from and attributable to the unauthorized use of the Meyer Persona for a commercial purpose, statutory damages, treble damages, costs and attorney's fees.

## COUNT FOUR
## COUNTERFEITING UNDER 15 U.S.C. §1114

60.     Ohio State incorporates the allegations contained in paragraphs 1 through 59 as if fully restated herein.

61.     Defendants, without authorization from Ohio State, have sold, offered for sale, distributed and/or advertised t-shirts that display counterfeits or colorable imitations of registered Ohio State trademarks.

62.     Defendants' actions are intended to cause, have caused and are likely to continue to cause confusion, mistake and deception among consumers, the public and Ohio State's licensees as to whether Defendants' infringing merchandise originate from or are affiliated with, sponsored by or endorsed by Ohio State.

63.     Defendants have acted with knowledge of Ohio State's ownership of the Ohio State Trademarks and with deliberate, willful intention to trade upon the consumer goodwill created and enjoyed by Ohio State for Defendants' profit.

64.     Defendants' acts constitute trademark counterfeiting in violation of 15 U.S.C. Section 1114.

65.     The goodwill of the Ohio State Trademarks is of enormous value, and Ohio State is suffering and will continue to suffer irreparable harm should Defendants' unauthorized production and sale of the counterfeit merchandise continues.

66.     Defendants' use of the Ohio State Trademarks on the counterfeit merchandise will continue unless enjoined by this Court.

67.     Ohio State is entitled to a permanent injunction against Defendants, as

well as all other remedies available under the Lanham Act, including, but not limited to, compensatory damages, statutory damages, treble damages, disgorgement of profits, and costs and attorneys' fees.

**WHEREFORE**, Ohio State requests that the Court order:

1. The issuance of a permanent injunction enjoining Defendants and their agents, servants, employees, successors, representatives and assigns, and all others in concert and privity with them from infringing, falsely designating the origin of the Ohio State Trademarks, and from passing off Defendants' products using Ohio State's Trademarks and/or the Meyer Persona, from using the Ohio State Trademarks and/or the Meyer Persona in commerce in any way, from injuring Ohio State's and Urban Meyer's reputations, and from otherwise violating the rights of publicity in the Meyer Persona that have been assigned to Ohio State;

2. That Defendants account to Ohio State for their profits, the actual damages suffered by Ohio State as a result Defendants acts of infringement, unfair competition and passing off, and violation of the Meyer Persona, together with interest and costs, and that such damages be trebled because of the willful acts described above, which acts were committed in knowing disregard of Ohio State's known rights;

3. That Defendants surrender all merchandise that bears any of the Ohio State Trademarks and/or the Meyer Persona for destruction;

4. That Defendants pay statutory damages of $1,000,000 per counterfeit mark per type of product sold, offered for sale, or distributed in accordance with 15 U.S.C. Section 1117;

5. That Defendants pay compensatory and treble damages to Ohio State;

6. That Defendants disgorge all profits realized from the sale of merchandise that bears any of the Ohio State Trademarks and/or the Meyer Persona;

7. That Defendants pay Ohio State's attorneys' fees, together with the costs of this suit; and

8. All other and further relief as may be just and equitable.

Respectfully submitted,

Michael DeWine
Attorney General of the State of Ohio



_____

Joseph R. Dreitler, Trial Attorney (0012441)
Mary R. True   (0046880)
DREITLER TRUE LLC
137 East State Street
Columbus, OH  43215
(614) 545-6354 (telephone)
(614) 241-2169 (facsimile)
jdreitler@ustrademarklawyer.com
mtrue@ustrademarklawyer.com


Attorneys for Plaintiff
The Ohio State University

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served upon all counsel of record this 22nd day of March, 2013 using the Court's ECF system.

_____/Mary R. True/_____